UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN G. DONOVAN,

         Plaintiff,    **MEMORANDUM & ORDER**
                CV 05-3726 (ARL)
  -against-

INCORPORATED VILLAGE OF MALVERNE,
ANTHONY J. PANZARELLA, MAYOR OF THE
VILLAGE OF MALVERNE, Individually and in his
Official Capacity, JAMES J. CALLAHAN, III,
DEPUTY MAYOR AND BOARD OF TRUSTEE
OF THE VILLAGE OF MALVERNE, Individually
and in his Official Capacity, JOSEPH J. HENNESSY,
BOARD OF TRUSTEE OF THE VILLAGE OF
MALVERNE, Individually and in his Official Capacity,
PATRICIA ANN McDONALD, BOARD OF
TRUSTEE OF THE VILLAGE OF MALVERNE,
Individually and in her Official Capacity, WILLIAM
G. MALONE, BOARD OF TRUSTEE and POLICE
COMMISSIONER OF THE VILLAGE OF
MALVERNE, Individually and in his Official Capacity,

         Defendants.
----------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

  The plaintiff, John G. Donovan ("Donovan"), filed this action in August 2005, pursuant to 42 U.S.C. § 1983, New York Civil Service Law § 107 and New York Labor Law § 201-d. The plaintiff alleges that the defendants, the Incorporated Village of Malverne, the Mayor and the Deputy Mayor of the Village, the Police Commissioner and the members of the Board of Trustees (collectively referred to as "the Village" or "the defendants") retaliated against him for statements he made in connection with his political and union activities and for giving deposition testimony in a suit brought against the Village. The defendants now move for summary

1

judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the defendants' motion is granted, in part.

**BACKGROUND**

The plaintiff has been employed by the Village of Malverne as a Police Officer since 1989. Def. 56.1 Statement at ¶ 1.[1] The plaintiff is also a member of the Malverne Chapter of the Police Benevolent Association (the "PBA") and has served as both a union delegate and a member of the executive board. *See* Donovan Aff. at ¶ 2; Def. 56.1 Statement at ¶¶ 5-6. The plaintiff has not held a union office since 2002. Def. 56.1 Statement at ¶ 7.

Sometime in 1996, the plaintiff applied for a promotion to become a sergeant. The sergeant position is supervisory in nature and affords a larger compensation package than the police officer position. *See* Donovan Aff. at ¶ 6. The application process consists primarily of taking a civil service examination and then, when a position opens, promotions are made by the Mayor subject to the consent of the Trustees.[2] Def. 56.1 Statement at ¶ 60. Donovan took the civil service examination three times and his test scores were among the top three each time. *See* Donovan Aff. at ¶ 7; Def. 56.1 Statement at ¶¶ 10, 15.

Donovan first sat for the civil service examination in October of 1996 and was ranked number three on the 1996 Eligible List. *See* Complaint at ¶¶ 45-46. Following the examination, the plaintiff was interviewed by the Mayor and four of the Village Trustees. *Id.* at ¶ 47.

---

[1] The facts set forth in the defendant's Rule 56.1 statement that are cited to by the court have not been denied by the plaintiff except where specified to be the defendants' contention.

[2] N.Y. Civil Service Law ¶ 61 "allows an employer making a promotional appointment from a civil service eligible list to choose one of the top three candidates willing to accept the promotion on the eligible list." Def. 56.1 Statement at ¶ 8.

Donovan contends that during the interview, the defendant Joseph Hennessy inquired as to how he would be able to advocate for PBA interests and simultaneously perform supervisory functions. *Id.* at ¶ 48.[3] Donovan also claims that both the President of the PBA and the Police Commissioner told several officers that if they wanted to be promoted they should consider curtailing his P.B.A. activities. Pls. 56.1 Counter-Statement at 13. The candidates that were ranked number two and four on the 1996 Eligible List received promotions. Complaint at ¶ 51.

Donovan sat for a second civil service examination in June of 1999. *Id.* at ¶ 59. On November 30, 1999, the Civil Service Commission established the 1999 Eligible List and the plaintiff was ranked number one. Def. 56.1 Statement at ¶ 10. On November 15, 2001, Police Officer Wade Engel was appointed from the 1999 Eligible List. Def. 56.1 Statement at ¶ 9. In 2002, Donovan was again interviewed by the Board of Trustees in connection with a promotion and although there was no discussion of his union activities, once again he was not promoted. Def. 56.1 Statement at ¶ 12. Instead, on March 1, 2002, Police Officer Robert Modica was promoted from the Eligible List.

Donovan took the sergeant examination for the third time in June 2002. *See* Complaint at ¶¶ 67-68.[4] On February 27, 2003, the Civil Service Commission establish another Eligible List naming the following top five candidates: (1) Andy Heuser, (2) John Donovan, (3) Robert

---

[3] The court notes that there is a discrepancy between the facts set forth in the complaint and the Affidavit of Donovan submitted in opposition to the motion. According to the complaint, the discussion with Hennessy took place after the 1996 civil service examination. In contrast, Donovan states in his affidavit that the Hennessy discussion took place after the 1999 examination. Donovan Aff. at ¶ 12.

[4] There also appears to be a discrepancy regarding the date of the examination and the Eligible List. The plaintiff contends that the Eligible List was compiled in 2002. According to the defendants records, the Eligible List was created in February 2003.

Lawlor, (4) Warren Clements, and (5) John Oddo. Def. 56.1 Statement at ¶¶ 14-15. In February 2004, Andy Hauser who had been ranked number one retired from the Police Department and the list was renumbered with the remaining four candidates. Def. 56.1 Statement at ¶¶ 16-17. In January 2005, Robert Lawlor, who was then number two on the list also retired and the list was again renumbered. Def. 56.1 Statement at ¶ 18. On May 19, 2005, Warren Clements was promoted to sergeant. Def. 56.1 Statement at ¶ 20. Clements was number two on the revised list at the time of his promotion. *Id.* Donovan was not even interviewed for the third promotion although he was ranked number one. Donovan Aff. at ¶ 13

Donovan contends that the reason he was never promoted was threefold. Donovan first claims he was denied a promotion because of his PBA Executive Board Membership. Donovan Aff. at 8. Next, Donovan claims he was denied a promotion because he gave truthful deposition testimony in a fellow police officer's personal injury lawsuit against the Village. Complaint at ¶ 30. Finally, Donovan states that the reason he was not promoted is because he campaigned for Andrew Chernoff ("Chernoff"), a non-incumbent candidate for Village Trustee, in March 2005, and in doing so, handed out leaflets indicating the PBA's endorsement of Chernoff and placed a campaign sign on his mother's property. *See* Donovan Aff. at ¶¶ 8-11.

The defendants contend that they did not retaliate against the plaintiff for any of the above-mentioned activities and were not even aware that Donovan has given testimony in the personal injury lawsuit or that he had campaigned for Chernoff. Def. Mem. at 5-9. The defendants argue that one of the reasons Donovan was denied a promotion was that he was involved in a car accident in which he was accused of leaving the scene of the accident. Specifically, on May 25, 2000, Nadira Ramtahal, a Malverne resident filed a citizen's complaint

4

against the plaintiff in which she reported:

> Upon exiting my vehicle I noticed that the other driver (who had exited his vehicle) was dressed in what appeared to be police department issued slacks. I approached the other driver and stated that I will pull over so that we can have a report of the accident taken, to which he responded in somewhat slurred speech, 'file a report?'
>
> As I entered my car and proceeded to pull over, the other driver reentered his car . . . and took off. He entered the railroad parking lot through the exit ramp, proceeded north through the lot and then around the rear of village hall exiting back on to Church Street heading north onto Ocean Avenue, and disappeared.

Defs. 56.1 Statement, Ex. E. Mayor Panzarella, named in this action in both his individual and official capacity, contacted Ms. Ramtahal and then requested that the Police Chief conduct an investigation. Defs. 56.1 Statement, Ex. H. at 23. The plaintiff does not deny that he left the scene of the accident or that he did not have his license or registration with him at the time, but contends that Ms. Ramtahal did not consider the accident "a big deal." Pls. 56.1 Counter-Statement at ¶ 47. He further notes that although an official investigation was conducted, the report found that he did not leave the scene of the accident and that the Ramtahal complaint was the result of a "miscommunication between the parties." *Id.; see also* Donovan Aff. at ¶ 16; Internal Investigation Report, annexed to Morelli Dec. at B.

The defendants contend that another reason they did not promote Donovan is that they had received complaints about the plaintiff directly from one the defendants, Patricia McDonald ("McDonald"), a Village Trustee. McDonald reported that Donovan would not answer the phone while he was assigned to desk duty. Defs. 56.1 Statement at ¶¶ 53-54. Specifically, McDonald reported that in August 2002, she called the police twice to report noises outside her house and

the plaintiff did not answer the call although he was the officer assigned to desk duty. Defs. 56.1 Statement, Ex. I at 16-18. When McDonald attempted to call the police for the third time, the plaintiff finally answered the phone, but put her on hold. *Id.* The next day, McDonald learned that Donovan had put her call on hold to take another call from a resident who was complaining about overnight parking and that he may have been sleeping when the first two calls were made because he had participated in a triathalon that morning. *Id.* at 17, 28. At her deposition, McDonald testified that she conveyed her feelings about the incident to the other Trustees when they discussed the promotion. *Id.* at 44.

The plaintiff does not dispute the incident with McDonald occurred, but explains that he was in the basement chocking and that neither he, nor Officer Cantanno, heard the phone ring. Donovan Aff. at ¶17. In addition, while Donovan acknowledges that he did not tell the defendants that he had suffered from a medical condition at his 2001/2002 interview, he notes that he was never disciplined. *Id.*

The defendants finally contend that they considered that the plaintiff had been criticized for incorrectly documenting the amount of mileage he did on his tour of duty and that he has been accused of not responding to a report of a shooting. Defs. 56.1 Statement, Exs. H at 14-15; I at 19-20. The plaintiff responds that while he documented that he had spent exactly 60 miles on his tour of duty, he often exceeded that number. Donovan Aff. at ¶18. Accordingly, Donovan further argues that the mileage incident was nothing more than a clerical error. In sum, Donovan contends that all of the incidents relied upon by the defendants are a pretext to justify their persistent failure to promote him. *Id.* at 19.

## DISCUSSION

### A. Summary Judgment Standards

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56©) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 129 (2d Cir. 1996).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the

non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999). With these standards in mind, the court addresses the plaintiff's claims.

**B.     Claims Barred by the Statute of Limitations**

As a threshold matter, the defendants contend that with the exception of the 2005 promotion of Officer Warren Clements, the promotional decisions relied upon by the plaintiff as adverse actions are barred by the statute of limitations. Defs. Mem of Law at 3.[5] In his complaint, the plaintiff claims that he was first denied a promotion sometime between 1996 and 1999, when two officers were promoted from the 1996 Eligible List. Donovan was next denied a promotion in November 2001, and again in March 2002, when two officers were promoted from the 1999 Eligible List. Finally, Donovan was denied a promotion in 2005, when an officer was chosen from the 2003 Eligible List. See Complaint at ¶¶ 45-71. The plaintiff filed his complaint on August 5, 2005.

There is no dispute that the statute of limitations governing the plaintiff's claims under § 1983 is three years. *See generally, Owens v. Okure,* 488 U.S. 235, 251 (1989); *Young v. Strack,* 2007 U.S. Dist. LEXIS 39771 *9 (S.D.N.Y. May 29, 2007)(applying three statute of limitations to First Amendment retaliation and Fourteenth Amendment claims). Under federal law, a § 1983 "claim accrues once the 'plaintiff knows or has reason to know of the injury which is the basis of his action.'" *See Veal v. Geraci,* 23 F.3d 722, 724 (2d Cir. 1994). With the exception of the 2005

---

[5] The plaintiff appears to concede this point as his opposition papers only address the denial of his 2005 promotion.

promotion, the plaintiff's claims are predicated on events that occurred prior to August 5, 2002, and are, therefore, time-barred.[6]

**C. The Plaintiff's § 1983 Claims**

As previously stated, the plaintiff contends that the defendants have deprived him of his constitutional rights as secured by the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983. Section 1983 provides a civil cause of action for damages against any person who, acting under the color of law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. *See* 42 U.S.C. §1983.[7] The defendants do not dispute that they acted under color of law; rather, they argue that the plaintiffs have provided no evidence that they have been deprived of any constitutional right. In addition, the individual defendants argue that they are entitled to qualified immunity.

---

[6]Although neither party addresses the statute of limitations applicable to the plaintiff's state law claims, the court notes that the applicable statute of limitations is three years with respect to the claims brought under New York State Civil Service Law § 107 and one year and ninety days with respect to the New York Labor Law § 201. *See Orange v. County of Suffolk,* 830 F. Supp. 701, 707 (E.D.N.Y. 1993)(claim brought under Civil Service Law § 107); *Notaro v. Giambra,* 2004 U.S. Dist LEXIS 17180 *12 (W.D.N.Y. Aug. 19, 2004)(claim brought under Labor Law § 201). Accordingly, any Civil Service Law claim predicated on events on or before August 5, 2002 are also time barred as are all of the plaintiff's Labor Law claims.

[7] Donovan has named, as defendants, the Incorporated Village of Malverne, the Mayor, the Deputy Mayor, the Police Commissioner and all of the members of the Board of Trustees in both their individual and official capacities. Although not addressed by the parties, the court notes that to state a claim against a municipality under section 1983, a plaintiff must also show that the deprivation was caused by the municipality's custom, practice or policy. *See Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). In addition, when a defendant is named in his official capacity, the real party in interest is the governmental entity and not the named official. *Hafer v. Melo,* 502 U.S. 21, 25 (1991).

### 1. The Plaintiff's First Amendment Retaliation Claim

The plaintiff claims the defendants have retaliated against him for exercising his First Amendment right to express himself as a board member of the PBA, for giving truthful deposition testimony, and for campaigning for Chernoff. Although a public employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment," these rights are not absolute. *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)). Accordingly, courts are often called upon to balance the interest of the employee in commenting on matters of public concern against the interest of the public employer in promoting the efficiency of the services it performs through its employees. *See Morris v. Lindau*, 196 F.3d 102, 109-10 (2d Cir. 1999).

However, before a court reaches this balancing test, a public employee asserting a First Amendment retaliation claim under § 1983 must initially demonstrate (1) that his speech addressed a matter of public concern; (2) that he suffered an adverse employment action; and (3) that a causal connection existed between the speech and the adverse employment action,"so that it can be said that his speech was a motivating factor in the determination." *Id.* at 110; *see also Mandell v. County of Suffolk,* 316 F.3d at 382(quoting *Morris v. Lindau,* 196 F.3d 109-10 (2d Cir. 1999)(internal citations omitted)). If the plaintiff can produce evidence supporting these three elements, a defendant can, nonetheless, prevail on a motion for summary judgment based on two different rationales. First, the defendant can prevail by demonstrating that it would have taken the same adverse action in the absence of the protected speech. *See Cotarelo v. Village of Sleepy Hollow Police Department,* 460 F.3d 247, 252 (2d Cir. 2006). Alternatively, the

defendant can show that the employee's speech was likely to sufficiently disrupt government activities so as to outweigh the First Amendment value of the plaintiff's speech. *Locurto v. Guiliani,* 447 F.3d 159, 172 (2d Cir. 2006).

Here, there is no dispute that the 2005 failure to promote amounts to an adverse employment action. *Mandell,* 316 F.3d at 383 (adverse employment action includes refusal to promote); *Treglia v. Town of Manlius,* 313 F.3d 713, 720 (2d Cir. 2002). Nor is there a question that Donovan's exercise of free speech addressed a matter of public concern. As stated earlier, the plaintiff contends that he engaged in the exercise of free speech in three distinct ways: (1) through his union activities; (2) through his political activities; and (3) by giving non-party deposition testimony in a civil case. *See* Donovan Aff. at ¶8. The defendants do not dispute that the plaintiff's political activities, undertaken both as a private citizen and in connection with his union membership, were protected. *See Mandell,* 316 F.3d at 383 (quoting *Connick v. Myers,* 461 U.S. 138, 146 (1983)("speech on 'any matter of political, social or other concern to the community' is protected by the First Amendment"); *see also Gronowski v. Spencer,* 424 F.3d 285, 292 (2d Cir. 2005). Moreover, the plaintiff has characterized his "union activities" and his "political activities" as one and the same. *See* Pls. Mem. in Opp at 6-7. He states, in this regard, that his participation in the political activities at issue are "part and parcel of his union advocacy of [the non-incumbent candidate]." *Id.*

In addition, the court also finds that the plaintiff's union membership, in and of itself, is enough to satisfy the public concern element. Although the Second Circuit has declined to rule on the issue of whether, in the absence of union activity, "pure union membership" is enough to satisfy the public concern requirement, *see Cobb v. Pozzi,* 363 F.3d 89, 107 (2d Cir 2004),

11

several courts have determined that union membership in and of itself satisfies the public concern requirement and the court is persuaded by those decisions. *See Scott v. Goodman,* 961 F. Supp. 424, 435 (E.D.N.Y. 1996), *aff'd* 191 F.3d 82 (2d Cir. 1999); *Maglietti v. Nicholson,* 517 F. Supp 2d 624, 635 (D. Conn. 2007).[8]

The court now turns to crux of the dispute, that is, whether or not the defendants retaliated against him for exercising his free speech. As noted earlier, to prevail on a claim of first amendment retaliation, a plaintiff must also establish a causal connection between his speech and the adverse action, "so that it can be said that his speech was a motivating factor in the determination." *Morris v. Lindau,* 196 F.3d at 110. A plaintiff can establish the causal connection between the protected activity and the adverse action directly by evidence of retaliatory animus directed against the plaintiff or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Wood v. Enlarged City Sch. Dist.,* 473 F. Supp. 2d 498 (S.D.N.Y. 2007)(*quoting Raniola v. Police Commissioner William Bratton,* 243 F.3d 610, 626 (2d Cir. 2001). The plaintiff may also rely on the temporal proximity of the protected action and the adverse employment action. *See Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554-55 (2d Cir. 2001).

There is sufficient evidence in the record from which *to* infer that Donovan may have been passed over because of retaliatory animus toward him. To begin with, comments made by Trustee Hennessy, the President of the PBA and the Police Commissioner all suggest that in

---

[8]The plaintiff indicates in his memorandum in opposition to the motion that only his 1999 promotion was denied on account of his deposition testimony. As that promotional decision is time barred, the court need not address the issue of whether or not the deposition testimony touches on a matter of public concern.

order to be promoted, officers were forced to give up their union positions. *See* Donovan Aff. at ¶12; Donovan Tr. at 213-214*;* Morelli Dec. at Ex. A; Pls. 56.1 Counter-Statement at ¶ 13. Although it is true that the defendant did not hold a union position in 2005, Donovan argues that he was a board member in 2002, and in 2005, as far as the Board was concerned, he was "still the same person." Donovan Tr. at 251.

In addition, the record contains evidence from which a jury could infer that the plaintiff's support for Chernoff factored into the Village's decision to deny his 2005 promotion. To begin with, the political activities took place two months before he was denied a promotion, and thus, amount to prima facie evidence of a causal connection. *Das v. Our Lady of Mercy Med. Ctr,* 2002 U.S. Dist. LEXIS 7771, *36 (S.D.N.Y. Apr. 30, 2002), aff'd 2003 U.S. App. LEXIS 1213 (2d Cir. 2003). In addition, the record contains evidence that the plaintiff posted a campaign sign on his mother's lawn, participated in three live campaign sessions in January and March, handed out leaflets during those three one-hour campaign sessions, and told potential voters at the live campaign sessions that he supported Chernoff. *See* Donovan Tr. at 141-145, 147-148, 150-153. In addition, the defendants were well aware of the PBA's support for Chernoff and tried to prevent PBA members from posting campaign signs on their lawns. *See* Esposito Aff. at ¶¶ 4-7. Finally, the record indicates that the two PBA members who did not have signs promoting Chernoff were the only officers to be promoted. *See* Donovan Tr. at 276.

Similarly, there are sufficient questions of fact with respect to the defendants' argument that they would have taken the same action in the absence of the protected activity. *See Crawford-El v. Britton,* 523 U.S. 574, 593 (1998)(defendant "still prevails by showing that it would have reached the same decision in the absence of the protected conduct."); *see also Texas*

13

*v. Lesage,* 528 U.S. 18, 21 (1999) (government can avoid liability in First Amendment retaliation claim by "proving that it would have made the same decision without the impermissible motive"). The plaintiff has argued that with respect to the car accident, an official investigation was conducted and it found that he did not leave the scene of the accident and that the Ramtahal complaint was the result of a "miscommunication between the parties." *Id.; see also* Donovan Aff. at ¶ 16; Internal Investigation Report, annexed to Morelli Dec. at B. With respect to the McDonald incident, a fellow officer witnessed the plaintiff chocking in the basement, testified that neither he nor Donovan heard the phone ringing, and that the incident did not even warrant an investigation. Donovan Aff. at ¶17. Finally, to the extent the defendants rely on the mileage reprimand, it is clear from the record that the incident did, in fact, involve a clerical error and that Donovan was only advised to be more careful in the future. *See* Ex. G annexed to Pls. 56.1 Counter-Statement. Based on the evidence, and drawing all reasonable inferences in favor of Donovan, a jury could conclude that the defendants' animus toward Donovan was based on his exercise of free speech. Thus, the defendants' motion with respect to the First Amendment retaliation claim must fail.

**2. Due Process**

The plaintiff claims that his due process rights were violated when the defendants "refused to grant [the] plaintiff an interview in connection with the 2005 promotion." Pls. Mem at 24-25. The plaintiff contends that, in doing so, the defendants violated their own "rules," "mutually explicit understandings," and "well established patterns of practice." *Id.* The only evidence presented by the plaintiff in support of this argument is a statement made by the former Police Chief who had advised officers "back in 1991 that the Village is going to be interviewing

from now on." *Id.* Even if the court were to treat this statement a "rule" or a "well-established practice," there is no evidence before the court suggesting that the policy of the Village was to provide a police officer an interview every time an opening arose. *Compare, Maglietti,* 517 F. Supp. 2d at 636 (denying motion for summary judgment as to due process claim where plaintiff offered evidence of the VA's internal policies regarding employee grievances and defendants' failure to follow procedures). Donovan had been interviewed by the Trustees two times before the 2005 promotion.

Moreover, Donovan has no legally protected interest in an interview even upon successful completion of the civil service examination. *See Morris v. Lindau,* 196 F.3d at 115-16 (*citing Deas v. Levitt,* 73 N.Y.2d 525, 532 (1989)('successful completion of the civil service exam does not create a property interest in an interview or a job). Unless there was a violation of a federal constitutional right as a result of the failure to follow the rules or the pattern of practice, a plaintiff cannot succeed on a Section 1983 claim. Finally, Donovan could have challenged the Board's refusal to interview him in an Article 78 hearing. See N.Y. C.P.L.R. §7801. Given that the failure to interview Donovan in 2005 did not rise to a level of a constitutional violation and that he had an adequate post deprivation remedy, the defendants are entitled to summary judgment on this claim.

### 3. Equal Protection

Although the plaintiff asserted an equal protection claim in his complaint, it appears from the plaintiff's submissions that the equal protection claim has been abandoned. The plaintiff has provided no argument in support of the claim and, in fact, states in his memorandum that "Apart from his First Amendment claims, plaintiff alleges that the defendants have violated his

15

procedural due process rights arising under the Fourteen Amendment. Pls. Mem at 24.

## D. Qualified Immunity

The individual defendants also argue that they are entitled to qualified immunity. *See Washington Square Post #1212 American Legion v. Maduro,* 907 F.2d 1288 (2d Cir. 1980)(question of qualified immunity is separate from merits of underlying action). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The qualified immunity doctrine, as formulated in Harlow, employs an objective standard, which, as the Supreme Court has observed, lends itself to resolution on summary judgment since it focuses on the objective reasonableness of a government official's actions in light of clearly established law, and not on what the government official subjectively intended." *Rapkin v. Rocque,* 228 F. Supp. 2d 142, 148 (D. Conn. 2002)(citing *Crawford-El v. Britton,* 523 U.S. 574, 588 (1998)). "Thus, for a defendant to secure summary judgment based on a defense of qualified immunity, he must show that 'no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[], could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right.'" *Id.* (quoting *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995) (internal footnote omitted).

Applying the principles of qualified immunity to the facts, the plaintiff argues that there is a clearly established right to be free from retaliation for his exercise of free speech, and, as noted,

a claim of retaliation necessarily involves a subjective element of motive or intent. In claims such as this, involving motive-based constitutional torts, "it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Rapkin,* 228 F.3d at 148 (quoting *Locurto,* 264 F.3d at 169 (citing *Crawford-El,* 523 U.S. at 589)). "Thus, the Second Circuit has held that where motive or intent is part of the constitutional tort, the employer's actual subjective motive is not irrelevant in a qualified immunity inquiry." *Id.* (citing *Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir. 1995)).

To balance the equation and the interests of both government officials and plaintiffs, the Second Circuit has developed a rule that requires the plaintiff, upon a motion for summary judgment in a motive-based tort action, to "proffer particularized evidence of direct or circumstantial facts . . . supporting the claim of an improper motive in order to avoid summary judgment." *Blue,* 72 F.3d at 1084. Examples of evidence that satisfy this showing are "expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Id.* For the same reasons explained, *supra,* the court concludes that, at his juncture, the record does not contain sufficient evidence to determine whether the defendants are entitled to qualified immunity. *See Crews v. County of Nassau,* 2007 U.S. Dist LEXIS 94597 (E.D.N.Y. 2007)( facts supporting defense must be clear from complaint).

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted, in part.

Dated: Central Islip, New York  
       February 19, 2008

SO ORDERED:  
_____/s/_____  
Arlene Rosario Lindsay  
United States Magistrate Judge